**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8    THE BOARD OF TRUSTEES, in their            No. C-14-1140 EMC
     capacities as Trustees of the CEMENT
9    MASONS HEALTH AND WELFARE
     TRUST FUND FOR NORTHERN
10   CALIFORNIA, *et al.*,                      **ORDER GRANTING PLAINTIFFS'**
                                                **MOTION FOR DEFAULT JUDGMENT**
11            Plaintiffs,
                                                **(Docket No. 24)**
12       v.

13   CHARLES B. HARDING
     CONSTRUCTION, INC., A Suspended
14   California Corporation,

15            Defendant.
     _____/
16

17       Plaintiffs are fiduciaries for the following trust funds:  the Cement Masons Health and Welfare

18   Trust Fund of Northern California, Cement Masons Pension Trust Fund for Northern California, Cement

19   Masons Vacation/Holiday Trust Fund for Northern California, and the Cement Masons Apprenticeship

20   and Training Trust Fund for Northern California (collectively, the "Trust Funds").  The Trust Funds are

21   all employee benefit plans.  *See* Docket No. 1 (Complaint).  The Trust Funds filed this lawsuit against

22   Defendant Charles B. Harding Construction, Inc. ("Harding Construction"), a suspended California

23   corporation, asserting claims pursuant to the Employee Retirement Income Security Act ("ERISA")[1]

24   and the Labor Management Relations Act ("LMRA").[2]

25

26

27       [1]  Codified at 29 U.S.C. § 1132, *et seq.*

28       [2]  Codified at 29 U.S.C. § 185, *et seq.*

United States District Court

For the Northern District of California

After Harding Construction failed to respond to the Trust Funds' complaint, the clerk of this court entered default against the Defendant on July 14, 2014. *See* Docket No. 20. Trust Funds thereafter moved this Court for entry default judgment. *See* Docket No. 24. On October 29, 2014, this Court ordered the Trust Funds to submit supplemental briefing and evidence regarding their claimed damages. *See* Docket No. 28. On December 1, 2014, this Court again ordered the Trust Funds to submit supplemental briefing, this time providing evidence in support of their attorneys's fees request. Docket No. 33. A hearing was held December 18, 2014. Having considered the Plaintiffs' briefs and accompanying submissions, the Court hereby **GRANTS** the motion for default judgment.

## I.  FACTUAL & PROCEDURAL BACKGROUND

On October 16, 2003, Harding Construction entered into a Memorandum Agreement with the District Council of Plasterers and Cement Masons of Northern California ("Union"). *See* Docket No. 26 (Lauziere Decl., Ex. B) ("Memorandum Agreement"). Under the Memorandum Agreement, Defendant agreed to comply with all "wages, hours and working conditions" set forth in the 1999-2005 Cement Masons Master Agreement for Northern California ("Master Agreement").[3] *Id.* Specifically, Harding Construction agreed to pay employer contributions to the various Trust Funds that are Plaintiffs here. *Id*; *see also* Lauziere Decl., Ex. A (Master Agreement § 8); Lauziere Decl, Ex. C (Welfare Trust Agreement Art. II, § 10). Defendant continues to be bound by the Master Agreement unless it provides the Union with written notice of its desire to change or cancel the Master Agreement. Lauziere Decl., Ex. B.

As relevant here, the trust agreements for the Trust Funds contain provisions that require Harding Construction to: (1) make contributions in a timely manner, *see, e.g.*, Lauziere Decl, Ex. C (Welfare Trust Agreement Art. II, § 10); (2) pay liquidated damages for any delinquent contribution, *see, e.g.*, Welfare Trust Agreement Art. II, § 10; (3) pay the Trustees' reasonable attorneys' fees and costs if the Board of Trustees ("Board") consults legal counsel, or files a suit or claim, *see, e.g.*, Welfare Trust Agreement, Art. IV, § 3; and (4) submit to an audit by the Board so that the Board

---

[3] Defendant also agreed to be bound by any future modifications, changes, amendments, supplements, extensions, or renewals of the Master Agreement. *Id.*

2

**United States District Court**
For the Northern District of California

1  may determine whether the employer is making full and prompt payment of all contributions owed

2  to the Trust Funds.  *See, e.g.*, Welfare Trust Agreement, Art. IV, § 7.

3       Pursuant to the Master Agreement and the trust agreements, Harding Construction submitted

4  to an audit of its books and records from the period of January 2007 to December 2010.  The audit

5  revealed that contributions had not been submitted to the Trust Funds as required by the agreements.

6  On March 11, 2014, Plaintiffs filed this action after Defendant refused to pay delinquent amounts

7  allegedly due and owed, as requested by the Trust Funds.  *See* Docket No. 1.  The Trust Funds now

8  request the Court grant them the following relief: (1) $41,033.05 in unpaid fringe benefits

9  contributions as revealed by the audit; (2) $40,175.90 in liquidated damages and interest;[1] (3)

10  $12,427.50 in attorney's fees and $3,005.66 in costs relating to the prosecution of this action; and

11  (4) a mandatory injunction ordering Harding Construction to permit auditors to come onto its

12  premises and to submit to an audit of its financial records for the period from January 1, 2011, to the

13  present date.  Plaintiffs also ask the Court to retain jurisdiction to enforce any injunction and to

14  entertain a further damages award should the audit disclose additional amounts owed by Defendant.

## II. DISCUSSION

16  A.    Adequacy of Service of Process

17       As a preliminary matter, the Court must first "assess the adequacy of the service of process

18  on the party against whom default is requested."  *Board of Trustees of the N. Cal. Sheet Metal*

19  *Workers v. Peters*, No. 00-cv-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

20  Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a corporation "by delivering a copy

21  of the summons and of the complaint to an officer, a managing or general agent, or to any other

22  agent authorized by appointment or by law to receive service of process and, if the agent is one

23  authorized by statute to receive service and the statute so requires, by also mailing a copy to the

24  defendant."  Fed. R. Civ. P. 4(h)(1)(B).

25       The proof of service for the summons and the complaint indicate that the documents were

26  personally served on Charles Harding on June 5, 2014.  *See* Docket No. 12.  Though the record in

27
28
---
[1] Plaintiffs originally sought $37,713.92 in liquidated damages and interest but modify this request in its motion for default judgment to $40,175.90 to reflect the continuing accrual of liquidated damages and interest on the unpaid contributions still outstanding.  *See* Lauziere Decl. ¶ 12.

**United States District Court**
For the Northern District of California

1  this case does not indicate whether Charles Harding is either the owner or agent for service of

2  process for Harding Construction, the California Secretary of State's business entity registry[2] lists a

3  Mr. Charles Burgess Harding as the agent for service of process for Defendant Charles B. Harding

4  Construction, a suspended California Corporation.  Moreover, the Contractors State License Board

5  lists Charles Burgess Harding as the sole owner of Harding Construction.[3]  This is sufficient

6  evidence that the complaint and summons were served on an officer or agent authorized by law to

7  receive service of process of Harding Construction, as required by Rule 4(h)(1).  Accordingly, the

8  Court concludes that service of process on Harding Construction was properly effectuated.

9  B.    Merits of Motion for Default Judgment

10         As noted above, the Clerk entered default against Defendant on July 14, 2014.  *See* Docket

11  No. 20.  After entry of default, a court may grant a default judgment on the merits of the case.  *See*

12  Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a

13  discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).  A court may consider

14  the following factors in exercising such discretion:

15              (1) the possibility of prejudice to the plaintiff, (2) the merits of
               plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
16              the sum of money at stake in the action, (5) the possibility of a
               dispute concerning material facts, (6) whether the default was due to
17              excusable neglect, and (7) the strong policy underlying the Federal
               Rules of Civil Procedure favoring decisions on the merits.
18

19  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been entered

20  in this case, the Court must construe as true all of "the factual allegations of the complaint, except

21  those relating to the amount of damages."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

22  (9th Cir. 1987).

23         The Court finds that the *Eitel* factors weigh in favor of granting default judgment.  For

24  example, as to the first factor, if the motion for default judgment were to be denied, then the Trust

25  Funds would likely be prejudiced as they would be left without a remedy.  *See Walters v.*

26  *Shaw/Guehnemann Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D.Cal. Apr. 15,

27  2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy.

28
─────────────────────────
[2]  Available at:  http://kepler.sos.ca.gov/ (last accessed, December 1, 2014).
[3]  *See* http://tinyurl.com/k922abg (last accessed, December 1, 2014).

Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

As for the fourth *Eitel* factor, the sum of money at stake in this action is appropriate for resolution on default judgment, particularly because the amount sought is narrowly tailored to Defendant's specific misconduct. *See Pepsico*, 238 F.Supp.2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"); *see also Church Bros., LLC v. Garden of Eden Produce, LLC*, No. 11-cv-04114, 2012 WL 1155656, at *3 (N.D. Cal. Apr. 5, 2012) ($212,259.21 deemed "modest" and "far less than [the amount] contemplated by the court in *Eitel*"); *Cf. Eitel*, 782 F.2d at 1472 (dispute over $2,900,000, when considered in light of disputed issues of material facts, supported the court's decision not to enter judgment by default).

As to the fifth, sixth, and seventh *Eitel* factors, because Harding Construction has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Nor is there any indication that Defendant's default was due to excusable neglect, as Plaintiffs personally served the complaint on Mr. Harding. *See* Docket No. 12. And while public policy favors decisions on the merits, *Eitel*, 782 F.2d at 1472, Harding Construction's choice not to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 11.

The only remaining factors that warrant additional analysis are the second and third *Eitel* factors – the merits of Trust Funds' substantive claims and the sufficiency of those claims. Plaintiffs have provided evidence that Harding Construction entered into a Memorandum Agreement with the Union. Lauziere Decl., Ex. B. The Memorandum Agreement, which incorporates by reference a Master Agreement, holds that the Defendant agrees "to pay all sums of money for each hour paid for and worked by employees performing work covered by said Master Agreement." *Id.*; Master Agreement § 8. The Master Agreement also incorporates by reference the trust agreements for the Trust Funds at issue, which also demand payment of employer contributions. *See* Master Agreement § 8; Welfare Trust Agreement Art. II § 1; Pension Trust Agreement Art. II § 1; Lauziere Decl. Ex.

**United States District Court**
For the Northern District of California

C, Vacation/Holiday Trust Fund Agreement ("Vacation Trust Agreement") Art. II § 1; Lauziere Decl. Ex. C, Apprenticeship and Training Trust Fund Agreement ("Training Trust Agreement") Art. II § 1 (each providing that trust funds "shall consist of all Contributions required by the Collective Bargaining Agreement").

The Trust Agreements also provide that, "[u]pon receipt of a written request from the Board, any Individual Employer will permit an auditor designated by the Board to enter upon the premises of that Individual Employer during business hours, at a reasonable time or times . . . to examine and copy books, records, papers or reports of that Individual Employer to determine whether that Individual employer is making full and prompt payment of all sums required to be paid by him or it to the Fund." Welfare Trust Agreement Art IV § 7 (representative Trust Agreement).

Plaintiffs' complaint alleges, and the Court must accept as true, *see TeleVideo Sys., Inc.*, 826 F.2d at 917, that Defendant has refused to pay its delinquent contributions to the Trust Funds and failed to make contributions in a timely manner as required by the Master Agreement and trust agreements. *See* Complaint at ¶¶ 8, 13. Thus, Plaintiffs have successfully stated a claim for relief under ERISA and the LMRA. *See* 29 U.S.C. § 1145 (providing that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."); 29 U.S.C. § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

The complaint further requests an injunction ordering Harding Construction to submit to an audit to determine additional amounts due or owed as required by the Master Agreement and the trust agreements. Complaint at ¶ 15. "Where a Fund's trust documents, to which an employer has bound itself, specifically provide that Fund trustees can examine any of the employer's records, an employer must comply with such agreed upon obligations." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Ben. & Training Funds v. BDR Inc.*, No. 05-cv-1385, 2006 U.S. Dist. LEXIS 70967, at *9 (N.D.N.Y Sept. 29, 2006) (citing *Central States, Southeast & Southwest*

**United States District Court**
For the Northern District of California

1    *Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985)).  Thus, Plaintiffs have again

2    successfully stated a claim for relief.

3    C.      Damages and Other Relief.

4           Because the Court concludes that default judgment is warranted, it must determine what

5    damages or other relief is appropriate.  Plaintiffs have the burden of "proving up" their damages or

6    the need for other requested relief.  *See Board of Trustees of the Boilermaker Vacation Trust v.*

7    *Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 ("Plaintiff has the burden of proving damages through

8    testimony or written affidavit.").  Under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who

9    prevails in a § 1145 claim (A) the unpaid contributions; (B) interest on the unpaid contributions; (C)

10   an amount equal to the greater of- (i) the interest on the unpaid contributions, or (ii) liquidated

11   damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions);

12   (D) reasonable attorney's fees and costs; and (E) other appropriate legal or equitable relief.  *See* 29

13   U.S.C. § 1132(g)(2).

14          In their motion for default judgment, the Trust Funds seek to recover all outstanding

15   contributions due and owing, interest and liquidated damages, and attorney's fees and costs.

16   Plaintiffs request an injunction requiring Defendant to submit to an audit of its books and records for

17   the period from January 1, 2011, through the latest calendar quarter.  Finally, Plaintiffs ask that the

18   Court retain jurisdiction to amend any judgment entered in this case in order to incorporate any

19   additional outstanding contributions an audit of Defendant's books might show Harding

20   Construction owes, including liquidated damages and interest on those sums.

21          1.      Unpaid Contributions, Liquidated Damages, and Interest

22          The Trust Funds assert that from January 2007 to December 2010, Defendant Harding

23   Construction failed to make $41,033.05 in required contributions to the Trust Fund.  *See* Docket No.

24   30 (Supplemental Brief Regarding Damages).  In support of this assertion, the Trust Funds have

25   provided a supplemental declaration from Michelle Lauziere, the Accounts Receivable Manager for

26   the Laborers Funds Administrative Office of Northern California, which provides administrative

27   services for the Trust Funds.  *See* Docket No. 31 (Lauziere Supp. Decl.) at ¶ 1.  Ms. Lauziere's

28

1  supplemental declaration summarizes the results of an audit performed by the Trust Funds, and

2  describes how she calculated the amounts due and owing to the Trust Funds.

3       Based on the audit of Harding Construction's records, Ms. Lauziere determined that

4  Defendant had not submitted benefit contributions to the Trust Funds for 2,271.12 hours of covered

5  work.  *See* Lauziere Supp. Decl. at ¶¶ 7-13.  Ms. Lauziere also provided the Court with the hourly

6  contribution rates for the relevant periods (*i.e.*, $15.63 per hour in December 2007 and June 2008,

7  $16.09 per hour in from September 2008 until November 2009, and $16.76 per hour from December

8  2009 to January 2010), and the number of hours of unpaid benefits for each relevant period.  *Id.*

9  Based on the evidence provided, the Court finds that the Trust Funds have met their burden of proof

10  regarding the amount of unpaid contributions from January 2007 until December 2010--namely

11  $41,033.05.

12       Each of the trust agreements also contain provisions allowing for the assessment of

13  liquidated damages on delinquent contributions, "assessed at a flat fee of $150.00 per month" and

14  further including "simple interest of 1.5% per month on all unpaid contributions."  *See* Lauziere

15  Supp. Decl. at ¶ 4.  Under Ninth Circuit law, an award of liquidated damages under § 1132(g)(2) is

16  "mandatory and not discretionary."  *Operating Engineers Pension Trust v. Beck Engineering &*

17  *Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984).

18       Trust Funds seek $40,175.90 in liquidated damages and interest.  Ms. Lauziere has explained

19  that this amount includes seven monthly payments of the flat $150 liquidated damages fee (*i.e.*,

20  $1,050), and $39,125.90 in accrued interest calculated at the 1.5% monthly interest rate.  *See*

21  Lauziere Supp. Decl. at ¶¶ 7-13.  The Court finds that the Trust Funds have met their burden as to

22  these claims.  Consequently, the Court awards total damages to the Trust Funds in the amount of

23  $81,208.95.[4]

24      2.   <u>Injunctive Relief</u>

25       Plaintiffs also request an injunction directing Defendant to submit to an audit of its financial

26  records for the period January 1, 2011, through the last calendar quarter.  Specifically, the Trust

27

28      [4]  This amount reflects the full amount of the unpaid contributions ($41,033.05) plus the full amount of the requested liquidated damages and interest ($40,175.90).

**United States District Court**
For the Northern District of California

1   Funds require that Harding Construction be required to "permit an auditor designated by the Board

2   to enter upon [its] premises . . . during business hours, at a reasonable time or times . . . to examine

3   and copy books, records, papers or reports of [Defendant] to determine whether [it] is making full

4   and prompt payment of all sums required to be paid by him or it to the Fund[s] [at issue]."  Welfare

5   Trust Agreement Art IV § 7 (representative Trust Agreement).

6          The Trust Funds' requested injunctive relief is appropriate under ERISA to the extent the

7   audit is tailored to the purpose of verifying that required contributions have been paid.  *See*

8   *International Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239

9   F. Supp. 2d 26, 31 (D.D.C. 2002) ("ERISA authorizes the court to provide for other legal or

10  equitable relief as the court deems appropriate [under 29 U.S.C. § 1132(g)(2)(E)].  This relief can

11  include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and

12  records.").  Accordingly, the Court grants the Trust Funds's claim for injunctive relief.  Harding

13  Construction is ordered to: permit an auditor designated by the Board to enter upon its premises

14  during business hours, and at a reasonable time or times, to examine and copy books, records, papers

15  or reports of Harding Construction to determine whether it is making full and prompt payment of all

16  sums required to be paid to the Trust Funds at issue.

17          3.    Continuing Jurisdiction

18          The Trust Funds also request that the Court retain jurisdiction over this case to monitor

19  Harding Construction's compliance with the audit and amend any judgment entered in this case to

20  incorporate any unpaid contributions discovered, as well as liquidated damages and interest.  Mot.

21  for Default Judgment at 5-6.  Courts of this district have found such action to be appropriate in

22  ERISA cases.  *See Walters v. Shaw/Guehnemann Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS

23  11992, at *11-12 (N.D. Cal. Apr.15, 2004) ("This Court retains jurisdiction over this case with

24  regard to contributions and damages determined owed to plaintiffs during the audit."); *Carpenters*

25  *46 Northern Cal. Counties Conference Bd. v. San Jose Woodworking, Inc.*, No. 00-cv-4690, 2001

26  WL 1671056 (N.D. Cal. Aug.14, 2001) ("This Court shall retain jurisdiction of this matter to enforce

27  the Order compelling an audit and payment of all amounts found due and owing.").  Accordingly, the

28  Court will retain jurisdiction of this case with regard to any contributions and/or damages

9

**United States District Court**
For the Northern District of California

1   determined to be owed to the Trust Funds after the latest audit has been completed and Harding

2   Construction's monthly contribution reports provided.

3          4.       Attorneys' Fees and Costs

4          The Trust Funds finally request that they be awarded their attorneys' fees and costs incurred

5   in litigating this lawsuit.  Specifically, the Trust Funds ask for $12,427.50 in attorneys' fees and

6   $3,005.66 in costs.  *See* Docket No. 25 (Declaration of Lozano-Batista) at ¶¶ 5, 9.

7          It is clear that costs and fees incurred by the Trust Funds are recoverable under ERISA.

8   Section 502(g)(2) of ERISA, codified at 29 U.S.C. § 1132(g)(2), "makes the award of attorney's fees

9   mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions."

10  *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983).  It is also "well-settled that the award of

11  attorneys' fees is a matter within the discretion of the trial court, and that an award of attorneys'

12  fees cannot be disturbed on appeal, absent a showing of abuse of discretion."  *Seymour v. Hull &*

13  *Moreland Eng'g*, 605 F.2d 1105, 1116 (9th Cir. 1979) (cited with approval in *Kemmis v.*

14  *McGoldrick*, 706 F.2d 993).

15         Having reviewed the Trust Fund's attorney and paralegal billing submissions, the Court finds

16  that nearly all of the hours billed for this case seem reasonable in light of the relative simplicity of

17  litigating this matter, and necessary to its effective prosecution.  *See* Docket No. 34 (Supplemental

18  Lozano-Batista Decl).  Further, the Court finds that the rates charged by the attorneys and paralegals

19  ($325 per hour for two senior attorneys, $275 per hour for two more junior attorneys, and $145 per

20  hour for three paralegals) are reasonable in this legal market for attorneys of similar skill and

21  experience.  *See, e.g.*, *Board of Trustees v. Montes Bros. Construction*, No. C-14-1324 EMC, 2014

22  WL 5768580, at *6 (N.D. Cal. Nov. 5, 2014) (approving slightly higher rates charged by attorneys at

23  same law firm that represents Trust Funds here).  However, the Court does note a few isolated time

24  entries in the Trust Fund's submissions that warrant specific comment, and which ultimately must be

25  rejected.

26         The Trust Fund's legal professionals collectively billed 40 hours to the prosecution of this

27  case.  *See* Lozano-Batista Decl. at ¶ 5.  Certain billed tasks, however, seem redundant or

28  unnecessary in this default judgment case.  Most notably, Mr. Lozano-Batista billed an hour of time

(split across four separate time entries of .25 hours each) to "Review Notice of Reassignment;" "Review order reassigning case to Edward Chen;" Review reassignment order to Judge Chen;" and "Review Order setting Case Management Conference for June 26, 2014 and assigning case to Judge Chen."  Supplemental Lozano-Batista Decl. at 8.  But the order reassigning this matter from Magistrate Judge Beeler is only one paragraph long, and is even shorter on substance worthy of legal review.  *See* Docket No. 9 (Reassignment Order).  The Court will therefore disallow this hour of charged time, which was billed at the rate of $325.00 per hour.  The Trust Funds will therefore be awarded attorneys fees in the amount of $12,102.50, reflecting the 39 hours of allowed time.  The Trust Funds are awarded $3,005.66 in costs.

### III.  CONCLUSION

The Court **GRANTS** the Trust Fund's motion for default judgment in the amount of $81,208.95, attorneys' fees in the amount of $12,102.50, and costs in the amount of $3,005.66.  The Court also **GRANTS** the Trust Fund's request for injunctive relief, and orders Harding Construction to permit an auditor designated by the Board to enter upon its premises during business hours, and at a reasonable time or times, to examine and copy books, records, papers or reports of Harding Construction to determine whether it is making full and prompt payment of all sums required to be paid to the Trust Funds at issue.  The Court will retain jurisdiction over enforcement of this judgment for a limited period of time.

///
///
///
///
///
///
///
///
///
///

*///*

A status conference in this case will be held to discuss the status of enforcement on **Thursday, April 16, 2015, at 10:30 a.m.**  Plaintiffs shall serve this Order on Harding Construction and shall file a proof of service with the Court within seven (7) days from the date of this Order.

This Order disposes of Docket No. 24.

IT IS SO ORDERED.

Dated:  December 18, 2014

_____

EDWARD M. CHEN

United States District Judge